IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMITÉ DE APOYO A LOS | : | CIVIL ACTION |
| TRABAJADORES AGRICOLAS, et al. | : | |
| v. | : | |
| THOMAS E. PEREZ, Secretary of the | : | NO. 13-7213 |
| Department of Labor, et al. | : | |

MEMORANDUM

Legrome D. Davis, J.                                                           July 23, 2014

Plaintiffs sue for judicial review of certain actions, decisions, and regulations in regard to

the agency's administration of wage benefits for foreign and United States workers under the "H-

2B program," Immigration and Nationality Act of 1952 (INA), 8 U.S.C. §§ 1101(a)(15)(H)(ii)(b)

(2014), and regulations promulgated thereunder, 8 C.F.R. § 214.2 and 20 C.F.R. Part 655,

Subpart A.  Plaintiff associations – Comité de Apoyo a los Trabajadores Agricolas, Pineros y

Campesinos Unidos del Noroeste, the Northwest Forest Worker Center, formerly known as the

Alliance of Forest Workers and Harvesters – sue on behalf of their members.  Plaintiffs – Saul

Arreguin Ruiz, Jesus Martin Sauceda Pineda, and Héctor Hernández Gomez – sue on their own

behalf and as representatives of a putative class of H-2B workers.[1]  Defendants are the Secretary

of Labor, Thomas E. Perez, Department of Labor (DOL), and Assistant Secretary for

Employment and Training Administration (ETA), Eric M. Seleznow.[2]  Jurisdiction is 28 U.S.C.

§ 1331.

---

[1] The proposed class:  "All H-2B and similarly employed U.S. workers whose employers received supplemental prevailing wage determinations (SPWDs) from the Department of Labor (DOL) under the April 24, 2013 Interim Final Rule."  Pls. Br. for Class Certification at 1 (Doc. No. 18-1).

[2] "Applications for labor certification are processed by the Office of Foreign Labor Certification (OFLC) in the Employment and Training Administration (ETA)," one of the agencies within the DOL that administers the H-2B program. La. Forestry Ass'n v. Sec'y U.S. Dept. of Labor, 745 F.3d 653, 664 (3d Cir. 2014); 20 C.F.R. § 655.00.  The National Prevailing Wage Center (NPWC) is "that office within the OFLC from which employers, agents, or attorneys who wish to file an Application for Temporary Employment Certification receive a prevailing wage determination (PWD)."  20 C.F.R. § 655.5.

Here, the scope and limitations of review are defined by the Administrative Procedure Act (APA), 5 U.S.C. §§ 551-583, 701-706, 801-808, 3105, 3344, 6362, 7562.  Chehazeh v. Att'y Gen. of U.S., 666 F.3d 118, 125 & n.11 (3d Cir. 2012).  The APA "provides the statutory structure on which federal administrative law is built."[3]  1 Richard J. Pierce, Jr., Administrative Law Treatise, § 1.1 at 2 (5th ed. 2010).

Plaintiffs ("CATA") move for summary judgment (Doc. No. 17).  Fed. R. Civ. P. 56.  The motion challenges the decision by the Board of Alien Labor Certification Appeals (BALCA) in Islands Holdings, LLC, No. 2013-PWD-00002 (Dec. 3, 2013) (en banc).  Administrative Record ("AR"), 1-15; Pls. Ex. E (Doc. No. 17-2 at 58-75).  That decision, it is asserted, should be held "unlawful and set aside" as not authorized by law and as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the APA.[4]  5 U.S.C. § 706(2)(A).

---

[3]  The Administrative Procedure Act (APA) permits judicial review for any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action," 5 U.S.C. § 702, provided that the "agency action is [not] committed to agency discretion by law," id. § 701(a)(2); no "statutes preclude judicial review, id. § 701(a)(1); and the action is "final agency action," id. § 704.  Chehazeh v. Att'y Gen. of U.S., 666 F.3d 118, 126 (3d Cir. 2012).  Here, there are no applicable preclusion-of-review statutes and no special review provisions in the statutes governing the agency.  "'[I]n the absence or inadequacy' of any 'special statutory review' provision, review may take 'any applicable form of legal action.'"  Id. at 126 (citing Smriko v. Ashcroft, 387 F.3d 279, 290-91 (3d Cir. 2004) (quoting 5 U.S.C. § 703)).

[4]  The motion for summary judgment mirrors much of the same relief sued for in the Complaint.  On December 11, 2013, Plaintiffs commenced this putative class action suing for a declaration that BALCA's rulings in Island Holdings are unlawful and an order vacating that decision.  See Compl. ¶ 3.a. (Doc. No. 1).  The Complaint also asks that the Secretary of Labor be enjoined from applying BALCA's rulings in Island Holdings to determine supplemental prevailing wage determinations in H-2B cases.  Id. ¶ 3.b.  Finally, the Complaint asks that this Court declare that all H-2B and similarly employed U.S. workers are entitled to be paid at the increased supplemental prevailing wage rate set forth in the April 24, 2013 IFR.  See Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program, Part 2, 78 Fed. Reg. 24047, 24047-48 (Apr. 24, 2013) (codified at 8 C.F.R. § 214.2, 20 C.F.R. § 655.10) (the "2013 IFR").

On February 10, 2014, Defendants answered (Doc. No. 30), in essence asserting that no factual allegations are at issue and setting forth three affirmative defenses that fall roughly under the umbrella of the ripeness doctrine, discussed infra.  See Defs. Answer, Affirmative Defenses ¶ 2 ("Plaintiffs fail to allege a final agency action."), ¶ 3 ("Relief should be denied as an exercise of judicial discretion to withhold relief."); ¶ 4 ("Plaintiffs suffered no injury.").

In Island Holdings, BALCA reviewed three supplemental prevailing wage determinations (SPWDs) that had been issued by the DOL on May 6, 2013, to a Massachusetts employer, Island Holdings LLC.  The SPWDs were issued  under the April 24, 2013 Interim Final Rule (IFR).  See Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program, Part 2, 78 Fed. Reg. 24047, 24047-48 (Apr. 24, 2013) (codified at 8 C.F.R. § 214.2, 20 C.F.R. § 655.10(b)(2)) (the "2013 IFR").  The 2013 IFR was promulgated to comply with this Court's March 21, 2013 Order, which  permanently enjoined use of the "skill level" methodology for determining prevailing wages under 20 C.F.R. § 655.10(b) (2008) and vacated the text, "at the skill level," from that subsection of the regulation.  See Comité de Apoyo a los Trabajadores Agricolas, et al. v. Solis ("CATA I"), No. 09-240, 2010 WL 3431761 (E.D. Pa. Aug. 30, 2010) (Pollak, J.); Comité de Apoyo a los Trabajadores Agricolas, et al. v. Solis ("CATA II"), No. 09-240, 933 F. Supp. 2d 700 (E.D. Pa. Mar. 21, 2013) (Davis, J.).

In October and November, 2012, the DOL approved the labor applications submitted by the employer, Island Holdings LLC.  Also, the DOL determined the prevailing wages to be paid by that employer for valid periods of employment that extended into November, 2013.  The prevailing wages were set under the 2008 H-2B regulation using 2008 wage rates.  See Labor Certification Process, 73 Fed. Reg. 78020 (Dec. 19, 2008) (codified at 20 C.F.R., Part 655) (the "2008 Wage Rule").  However, the SPWDs issued on May 6, 2013, retroactively increased the prevailing wages to be paid by that employer.  See Summary of 2012-2013 PWDs, AR 129.  In Island Holdings, BALCA invalidated the SPWDs, ruling broadly that Defendant the Secretary of Labor's policies, rules, and procedures for issuing SPWDs to H-2B employers, as set forth in the preamble to the 2013 IFR, were invalid and unenforceable.

3

Importantly, BALCA ruled that Defendants lacked the authority to issue SPWDs in cases where the DOL has already approved an application for labor certification and determined a prevailing wage.  Island Holdings, AR 11-14.  In addition, BALCA ruled that Defendants lacked the authority to require H-2B employers to pay "the highest of the most recent prevailing wage that is or will be issued" to the employer, despite the employer's agreement on ETA Form 9142, Appendix B.1,[5] to pay an adjusted supplementary prevailing wage rate.  Id., AR 12-13.

Plaintiffs' position is that BALCA erred in so ruling and did so in  excess of the authority delegated to it under the DOL's intra-agency review and appeal provisions.  See 20 C.F.R. § 655.10(g) (Apr. 24, 2013); § 655.11(e), (h)(2)(ii) (Apr. 23, 2012); § 655.61(e) (Apr. 23, 2012), formerly codified at § 655.33.  See also 29 C.F.R. § 18.58.[6]  Specifically, it is submitted that BALCA erred by declaring invalid and unenforceable:

(1)  The requirement that employers whose H-2B temporary labor applications were certified prior to April 24, 2013, pay increased wages upon receipt of a supplemental prevailing wage determination calculated under the April 24, 2013 IFR.

(2)  The promise made by every H-2B employer in the ETA Form 9142 Appendix B.1, as amended April 14, 2011, to pay the highest of the most recent prevailing wage that is or will be issued by the Department.

---

[5]  All H-2B employers are required to obtain a temporary labor certification from the DOL.  Since April 14, 2011, the standard H-2B application form included ETA Form 9142, Appendix B.1.  That Form added a requirement that a signatory employer certify that "[t]he offered wage equals or exceeds the highest of the most recent prevailing wage that is or will be issued by the Department to the employer for the time period the work is performed . . . ."  See Application of the Prevailing Wage Methodology in the H-2B Program, 76 Fed. Reg. 21036, 21036-37 (Apr. 14, 2011) (attaching the amended Form).  The 2013 IFR again expressly notified the regulated public that all employers would be expected to fulfill this condition upon receiving a SPWD.  See 78 Fed. Reg. 24047, 24055 (Apr. 24, 2013).  See also Pls. Br. at 4 & nn.5, 6 (Doc. No. 17-1); Defs. Resp. at 16-17 (Doc. No. 31).

[6]  "The procedures for appeals shall be as provided by the statute or regulation under which hearing jurisdiction is conferred.  If no provision is made therefore, the decision of the administrative law judge shall become the final administrative decision of the Secretary."  29 C.F.R. § 18.58 (June 12, 2014).

Pls. Mot. ¶ 1at 2 (Doc. No. 17).

Plaintiffs say that BALCA ruled in <u>Island Holdings</u> "on behalf of" Defendants.  The intended meaning of that phrase is not so clear, however.  The record shows only that BALCA <u>en banc</u> considered the SPWDs issued on May 6, 2013, to the employer, Island Holdings LLC.  BALCA did so at the request of both parties.  The DOL's Certifying Officer (CO) explained:

> This, admittedly unprecedented, request[ ] is warranted because this appeal involves a matter of exceptional importance which could impact a significant number of additional cases and expose the Department to sanctions from a U.S. District Court.

CO's Request at 1, and BALCA's Order, dated 6/20/13, granting <u>en banc</u> review, Pls. Exs. D-1, D-2 (Doc. No. 17-2 at 51-57).

In this case, the parties' respective positions are closely aligned.  Both sides agree that <u>Island Holdings</u> does not represent the legal or policy position of Defendant the Secretary of Labor as reflected in the preamble to the 2013 IFR.  <u>See</u> 78 Fed. Reg. 24047, 24049, 24051-55 (Apr. 24, 2013).  <u>See</u> <u>also</u> Pls. Reply at 1-2 (Doc. No. 47); Defs. Resp. at 2, 12-13, 16-17 (Doc. No. 31) (expressing agreement).  For example, Defendants' position is:

> The BALCA's <u>Island Holdings</u> decision represents a resolution of that individual case which is not subject to further administrative review . . . , but the BALCA's decision does not represent the legal position of the Secretary of Labor.

Defs. Resp. at 12 (Doc. No. 31) (citing 20 C.F.R. § 655.11(e) (Apr. 23, 2012)).  As to whether BALCA's rulings in <u>Island Holdings</u> are valid and should be applied by the DOL in future adjudications, apparently both sides would answer "no."  Moreover, it is not contested that Defendant the Secretary of Labor is authorized to make policy and law for the DOL, and that BALCA – which is composed of Administrative Law Judges who are subordinate agency employees – is not so empowered.  Defs. Resp. at 12-13 (Doc. No. 31); Pls. Reply Br. at 1, 2

(Doc. No. 47) ("BALCA has no legal authority to review, let alone strike down, the regulations and policies of the Secretary of Labor."). Neither side suggests that the Secretary is forever bound by Island Holdings as to future rulemaking and adjudications in the H-2B program.

Both sides propose the same remedy for resolution of this controversy – that this Court vacate BALCA's decision in Island Holdings, remanding that case to the DOL. The parties initially diverged as to the reasons proffered for vacating BALCA's decision in Island Holdings. However, they reached consensus[7] on a narrow ground for decision suggested by Defendant the Secretary of Labor – that is, this Court's March 21, 2013 vacatur order issued in CATA II:

> Because the Court's vacatur order required DOL to replace the invalid 2008 wage rates, the BALCA's decision allowing employers to continue using the vacated 2008 wage rates after the issuance of the [April 24, 2013] Interim Final Rule was contrary to this Court's order.

Defs. Resp. at 2, 13 (Doc. No. 31).

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The factual background and procedural history of this case have been set out in previous memoranda issued in related cases. See CATA I, No. 09-240, supra; CATA II, No. 09-240, supra. See also La. Forestry Ass'n, Inc. v. Sec'y U.S. Dept. of Labor, No. 11-7687, 889 F. Supp. 2d 711 (E.D. Pa. Aug. 20, 2012) (Davis, J.), aff'd, 745 F.3d 653 (3d Cir. Feb. 5, 2014). Only information most relevant to this motion for summary judgment is recited here.

A.   Administrative Record

The parties agree that the record created before the agency as to the three SPWDs issued on May 6, 2013, to the employer, Island Holdings LLC, for respectively, housekeepers, cooks,

---

[7] On January 10, 2014, Plaintiffs filed the instant motion for summary judgment (Doc. No. 17), and on February 10, 2014, Defendants responded (Doc. No. 31). On March 17, 2014, Plaintiffs replied that they "fully support DOL's alternative basis for granting Plaintiffs relief." Pls. Reply Br. at 2 (Doc. No. 47).

and servers, comprises the administrative record here.  See Def. Secretary's Notice, dated

2/13/14 (Doc. No. 34).  See also SPWDs, dated 5/6/13, AR 44-54; id., Pls. Exs. A-1, A-2, A-3

(Doc. No. 17-2).

On May 13, 2013, the employer, Island Holdings LLC, requested that the DOL's CO

reconsider the SPWDs under 20 C.F.R. § 655.10(g) (Apr. 24, 2013).  AR 93-127.  On May 23,

2013, before the requested review was done, the employer moved for emergency relief requesting

that BALCA directly review the SPWDs.  AR 141-157.  The employer argued that BALCA

should do so because the DOL's intra-agency review and appeal procedures did not apply to

SPWDs issued under the April 24, 2013 IFR.  See, e.g., Empl'r Br., AR 148 ("Because the 2013

IFR does not provide for issuance of Supplemental PWDs, it is unsurprising that the regulations

do not provide an appeal mechanism for them.").  On June 6, 2013, the DOL's CO at the

National Prevailing Wage Center (NPWC) also requested that BALCA en banc consider the

SPWDs.  See BALCA's Order granting en banc review, dated 6/20/13, AR 415-16; Pls. Ex. D-2

(Doc. No. 17-2 at 56-57).  On June 20, 2013, BALCA granted en banc review and permitted

amici curiae, now Plaintiffs in this litigation, to participate.  Id.

On July 2, 2013, BALCA remanded the three SPWDs issued to the employer, Island

Holdings LLC.  BALCA did so because it "sua sponte questioned whether the appeal was ripe for

review, given that the parties had not completed the review process set forth at 20 C.F.R. §§

655.10 and 655.11."  Remand Order, dated 7/2/13, AR 1615.

After remand to the DOL, the NPWC denied redetermination on July 26, 2013, and

affirmed the SPWDs as having been correctly issued in conformity with the April 24, 2013 IFR.

AR 1437-49, 1507-19; Pls. Exs. B-1, B-2, B-3 (Doc. No. 17-2 at 16-30).  The employer, Island

Holdings LLC, sought further review of this decision by the Director of NPWC under 20 C.F.R. § 655.11 (Apr. 23, 2012).  AR 1451-58, 1521-28.  On August 20, 2013, the Director of NPWC issued three decisions, affirming each of the SPWDs.  AR 1460-74, 1529-44; Pls. Exs. C-1. C-2, C-3 (Doc. No. 17-2 at 31-48).

On August 30, 2013, the employer, Island Holdings LLC, timely appealed to BALCA each of the three decisions by the Director of NPWC, which affirmed the SPWDs issued on May 6, 2013.  AR 1404-14, 1475-84.  On December 3, 2013, BALCA issued its decision in Islands Holdings, LLC, No. 2013-PWD-00002 (Dec. 3, 2013), invalidating each of the SPWDs and remanding the cases to the DOL's CO with instructions to vacate the SPWDs.  AR 1-15.

> B.   Status of Supplemental Prevailing Wage Determinations Made Under the
>      April 24, 2013 Interim Final Rule

After BALCA issued its decision in Island Holdings, Defendants stayed further action on all SPWDs that are pending conclusion of the DOL's intra-agency review and appeal processes. On remand from BALCA, the CO has not yet vacated the three SPWDs issued to the employer, Islands Holdings LLC.  To date, the DOL has not taken further action on any of the contested SPWDs.  Defendants inform the Court that "[t]here are approximately 1,300 SPWDs under further administrative review, which are on hold pending the outcome of this litigation."  Defs. Resp. at 10 n.5 (Doc. No. 31); see also Answer ¶¶ 50, 57-58 (averring same total of stayed cases). The DOL stayed further action on the SPWDs because it decided to postpone decision on whether to comply with BALCA's rulings in Island Holdings:

> After a full review of the BALCA decision and the district court complaint [in this action], the Department has decided to postpone action on this decision pending judicial review, as permitted by 5 U.S.C. § 705.  This action is in the interest of justice given the confusion and disruption that would be created if we implemented the decision and it was subsequently overturned by the district court.

Letter of Def. Acting Assistant Secretary, ETA, Eric M. Seleznow, dated 12/20/13, Pls. Ex. M (Doc. No. 17-2 at 130), responding to Letter of counsel for Island Holdings LLC, Wendell V. Hall, Esq., dated 12/16/13, Pls. Ex. L (Doc. No. 17-2 at 126-128).  See Letter of Hall, Esq. replying to Def. Seleznow, dated 12/24/13, Pls. Ex. O (doc. No. 17-2 at 134-139).  See also the DOL's OFLC Website Announcement, dated 12/20/13, and Website Update, dated 12/23/13, Pls. Ex. N (Doc. No. 17-2 at 131-1 33).  See also APA, 5 U.S.C. § 705.[8]

 C.  H-2B Rulemaking Planned for 2014-2015

 On January 17, 2014, the Consolidated Appropriations Act, 2014, Public Law 113-76, 128 Stat. 5, was enacted.  Unlike past appropriations, that Act did not include a rider banning appropriations to implement, administer, and enforce the 2011 Wage Rule:

> For the first time in over two years, DOL's appropriations did not prohibit the implementation or enforcement of the 2011 Wage Rule.

Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program, 79 Fed. Reg. 14450, 14453 (Mar. 14, 2014) ("2014 H-2B Notice").  See also 76 Fed. Reg. 3452 (Jan. 19, 2011) (the "2011 Wage Rule").  The parties agree that the 2011 Wage Rule is now "fully funded."  Hr'g Tr., 14:20-23, 39:15-20, dated June 17, 2014 (Doc. No. 29).

 Another sea change occurred after BALCA issued its decision in Island Holdings on December 3, 2013 – on February 5, 2014, our Court of Appeals decided La. Forestry Ass'n, Inc.

---

 [8] "When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review.  On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of any agency action or to preserve the status or rights pending conclusion of the review proceedings."  APA, 5 U.S.C. § 705.

v. Sec'y U.S. Dept. of Labor, 745 F.3d 653 (3d Cir. 2014).  That case challenged the 2011 Wage

Rule under the APA and presented the question whether Defendant the Secretary of Labor has

the authority to issue legislative rules in the H-2B program, specifically the 2011 Wage Rule.[9]

See 2011 Wage Rule, 76 Fed. Reg. at 3453, 3484.  It was held that the Secretary has the authority

to do so:

> We find that DOL has authority to promulgate rules concerning the temporary
> labor certification process in the context of the H-2B program, and that the 2011
> Wage Rule was validly promulgated pursuant to that authority.

Id., 745 F.3d at 669.  Our Court of Appeals held that the Secretary has limited legislative

rulemaking authority to carry out Congress's charge to the Department of Homeland Security

(DHS) to consult with and obtain the advice of government agencies such as the DOL:

> We hold . . . that the 2011 Wage Rule was issued pursuant to the DHS' permissible
> "conditioning" of the grant of H-2B petitions on the advice of the DOL pursuant to
> the DHS's charge from Congress to "determine[ ]" H-2B visa petitions "after
> consultation with appropriate agencies of the Government."  8 U.S.C. § 1184(c)(1).
> . . . We . . . hold . . . that the 2011 Wage Rule was lawfully promulgated pursuant to
> a reasonable interpretation of a statutory provision charging the DHS with
> administration of the H-2B program.  See 8 U.S.C. § 1184.  Our decision is
> completed by the principles of deference governing our review on appeal.

Id., 745 F.3d at 675 (alteration in original) (footnote omitted).

On March 14, 2014, the DOL notified the regulated community that it "intends to publish

a notice of proposed rulemaking on the proper wage methodology for the H-2B program working

---

[9]  The 2011 Wage Rule was the product of notice and comment rulemaking.  It establishes a wage calculation regime wherein the prevailing wage for an employer's job opportunity within the H-2B program is the highest of the wage calculable under a collective bargaining agreement, if there is one; the arithmetic mean wage of the Occupational Employment Statistics (OES) for each occupational category in the area of intended employment as compiled by Bureau of Labor Statistics; the Davis-Bacon Act (DBA), 40 U.S.C. § 276a et seq.; or the McNamara-O'Hara Service Contract Act (SCA), 41 U.S.C. § 351 et. seq.  See 76 Fed. Reg. 3452, 3453, 3484 (Jan. 19, 2011) (the "2011 Wage Rule").  However, these policy choices were never implemented because Congress never appropriated the necessary funds.

off of the 2011 Wage Rule as a starting point." 2014 H-2B Notice, 79 Fed. Reg. at 14450.

Furthermore, "Defendants anticipate the publication of a notice of proposed rulemaking by

December 31, 2014." Defs. Resp. filed in C.A. No. 14-2657 at 8 ( Doc. No. 21). See also Hr'g

Tr., 19:6-21:5, 21:23-22:15, 26:6-27:1, dated June 17, 2014 (Doc. No. 29) (discussing agency's

ongoing empirical investigation and planned rulemaking).

     In the planned rulemaking, Defendants the Secretary of Labor and the DOL plan to

evaluate the H-2B prevailing wage methodology. Specifically, the agency plans to consider

policy choices made in the 2011 Wage Rule and the 2013 IFR as well as those to be newly made.

In addition, the regulated community may participate in the rulemaking through comments:

"DOL intends to engage in further notice and comment rulemaking in order to move toward

implementing, subject to modifications based on the notice and comment, the 2011 Wage

Rule."[10] 2014 H-2B Notice, 79 Fed. Reg. at 14453. The agency promises final action, stating

that it "will consolidate our current review of comments on the 2013 IFR with review of

comments received on the new notice of proposed rulemaking, and will issue a final rule

accordingly." Id.

---

    [10] "With the appropriations rider pertaining to the 2011 Wage Rule having been lifted, the Department has begun the process of determining how to implement that rule, keeping in mind the overlap between that rule and the comments submitted in connection with the 2013 IFR. DOL has determined that recent developments in the H-2B program require consideration of the comments submitted in connection with the 2013 IFR, and that further notice and comment is appropriate. As stated in the preamble to the 2011 Wage Rule (76 FR 3458-61), and the preamble to the 2013 IFR (79 FR 24053-54), DOL will continue to implement the H-2B wage methodology using the OES mean wage rate as the proper baseline for setting prevailing wage rates. DOL continues to evaluate other policy choices, including the possible use of SCA and DBA wage rates and private surveys, in light of additional public input and program experience. After receiving and reviewing this information, DOL intends to exercise its rulemaking authority to implement a regulation governing the wage methodology in the H-2B program, modified as necessary to accommodate these developments and considerations." 79 Fed. Reg. 14450, 14453 (Mar. 14, 2014) ("2014 H-2B Notice).
.

III.     <u>ANALYSIS</u>

The record does not contain any disputed facts material to a decision on the motion for

summary judgment.  Only questions of law are presented.  However, the motion will be denied

based on threshold considerations of justiciability.  The claims for relief presented here are not

justiciable primarily because Plaintiffs do not have standing to assert the claims, and the claims

are not ripe for decision.  The agency's factual investigation and rulemaking are not complete.  It

has not arrived at a definite decision as to the proper interpretation of the regulation at issue –

that is, the determination of supplementary prevailing wages under 20 C.F.R. § 655.10(b)(2),

among other issues.

"'[F]ederal courts are only empowered to decide cases and controversies' as our Article

III jurisprudence defines them."  <u>Birdman v. Office of the Governor</u>, 677 F.3d 167, 173 (3d Cir.

2012) (quoting <u>Felmeister v. Office of Att'y Ethics</u>, 856 F.2d 529, 535 (3d Cir. 1988)); U.S.

Const. art. III, § 2.  "'Courts enforce the case-or-controversy requirement through several

justiciability doctrines,' which 'include standing, ripeness, mootness, . . . and the prohibition on

advisory opinions.'"  <u>Keitel v. Mazurkiewicz</u>, 729 F.3d 278, 280 (3d Cir. 2013) (quoting <u>Toll</u>

<u>Bros., Inc. v. Twp. of Readington</u>, 555 F.3d 131, 137 (3d Cir. 2009)).

Even where the constitutional minimum of a case-or-controversy has been met, prudential

considerations may still require judicial restraint.  <u>See</u> <u>Lewis v. Alexander</u>, 685 F.3d 325, 338,

340 (3d Cir. 2012), <u>cert. denied</u>, 133 S. Ct. 933 (U.S. 2013) (prudential standing requires, <u>inter</u>

<u>alia</u>, "that the grievance not be so abstract as to amount to a generalized grievance"); <u>Nat'l Park</u>

<u>Hospitality Ass'n v. Dept. of Interior</u>, 538 U.S. 803, 808 (2003) (doctrine of ripeness is drawn

both from Article III limitations on judicial power and from prudential reasons for refusing to

12

exercise jurisdiction) (citing <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 148-49 (1967), <u>abrogated on other grounds by</u> <u>Califano v. Sanders</u>, 430 U.S. 99 (1977)); <u>accord</u> <u>Felmeister</u>, 856 F.2d at 535. Considerations of ripeness "are sufficiently important that we are required to raise the issue <u>sua sponte</u> even though the parties do not." <u>Id.</u>  Also, "[b]ecause constitutional standing is a jurisdictional requirement, '[w]e are obliged to examine standing <u>sua</u> <u>sponte</u> where standing has erroneously been assumed below.'" <u>Lewis</u>, 685 F.3d at 338 n.10 (quoting <u>Adarand Constructors, Inc. v. Mineta</u>, 534 U.S. 103, 110 (2001)).

> A.     Plaintiffs Have Not Established Article III Standing

Whether there is an Article III case or controversy here requires, among other things, a final agency action, decision, or regulation, which is challenged by a litigant with "standing" – that is, "there must be some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." <u>Nat'l Park</u>, 538 U.S. at 808, 815 (Stevens, J., concurring) ("a 'plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" (quoting <u>Sierra Club v. Morton</u>, 405 U.S. 727, 735 (1972)).  <u>See also</u> <u>CATA I</u>, No. 09-240, 2010 WL 3431761, at *4-6 (citing <u>Common Cause of Pa. v. Pennsylvania</u>, 558 F.3d 249, 257 (3d Cir. 2009) (Plaintiffs had standing to challenge the 2008 H-2B regulations)).

One element of the "irreducible constitutional minimum" of Article III standing "is often determinative," as it is here – that is, the claimant's "injury-in-fact." <u>Toll Bros.</u>, 555 F.3d at 137-38 & n.4 (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)).  This element requires a showing that the claimant "suffered a 'concrete,' 'particularized' injury-in-fact, which must be 'actual or imminent, not conjectural or hypothetical.'" <u>Id.</u> at 137 (quoting <u>Lujan</u>, 504

13

U.S. at 560).  In other words, this element requires that:

> plaintiff must suffer a palpable and distinct harm. . . . That harm "must affect the plaintiff in a personal and individual way." . . . The injury can be widely shared, . . . but it must nonetheless be concrete enough to distinguish the interest of the plaintiff from the generalized and undifferentiated interest every citizen has in good government. . . . In this way, injury-in-fact keeps the judicial branch from encroaching on legislative prerogatives, thereby preserving the separation of powers.

Id. at 138 (quoting Lujan, 504 U.S. at 560 n.1) (other citations and internal quotation marks omitted).  Plaintiffs do not have standing to sue for broad, programmatic changes untethered to a concrete case or controversy.  The injury-in-fact requirement protects an executive agency from judicial interference until the agency's decisions are formalized and "their effects felt in a concrete way by the challenging parties."  Abbott Labs., 387 U.S. at 148-49.

Plaintiffs contend that BALCA's decision in Island Holdings is final agency action that adversely affects their members and co-workers.  They contend that those rulings retroactively invalidated all of the SPWDs issued to H-2B employers under the 2013 IFR, even those issued to employers that did not timely request intra-agency review.  See Pls. Br. at 13 (Doc. No 17-1).  It is also contended that BALCA's decision retroactively relieved all H-2B employers that were certified prior to April 24, 2013, of the promise contained in Form 9142, Appendix B.1 to pay supplemental prevailing wages under the 2013 IFR.  Id.  By these rulings, Plaintiffs say, BALCA has improperly reduced the prevailing wages required by this Court's March 21, 2013 vacatur order and the 2013 IFR, harming thousands of H2-B and similarly employed U.S. workers.  Id.

Regardless of the merits of these assertions, Plaintiffs have not established the constitutional minium of Article III standing to challenge BALCA's rulings in Island Holdings.  There is no evidence that Plaintiffs have suffered any injury – that is, a concrete, palpable,

particularized injury-in-fact that is actual or imminent, and not conjectural or hypothetical.  The record does not show any agency action applying BALCA's rulings in <u>Island Holdings</u> to Plaintiffs – either the associations or their members – in any fashion that harms or threatens to harm them.  The record shows just the opposite – that any further agency action on the contested SPWDs has been stayed indefinitely across the board.  Nothing suggests that the stay will be lifted any time soon.  Instead, it appears that the stay will most likely be maintained until conclusion of the planned rulemaking in 2014-2015.  BALCA's rulings in <u>Island Holdings</u> have not yet permanently reduced any worker's wages.  And on this record, it is entirely conjectural whether those rulings will ever affect the prevailing wages to be paid to workers.

In addition, Plaintiffs proffer only supposition as to how the agency and H-2B employers might use BALCA's rulings in <u>Island Holdings</u> to adversely affect prevailing wages for H-2B workers.  These fears are not well grounded.  Defendants have not said whether they intend to defend or enforce BALCA's rulings in <u>Island Holdings</u>.  Also, it is not certain what the agency's final position on prevailing wages might be at conclusion of the planned rulemaking.  But that is not an injury-in-fact.  It is part  of notice and comment rulemaking.  The uncertainty is best cured by permitting the agency to complete its rulemaking and conclude its procedures for review of the SPWDs without interference from this Court.

B.      Plaintiffs Do Not Challenge Final Agency Action

Here, there is  no Article III case or controversy for another reason – finality is absent in this case.  The concept of finality "refers to the conclusion of activity by the agency."  <u>Bethlehem Steel Corp. v. EPA</u>, 669 F.2d 903, 908 (3d Cir. 1982).  <u>See</u> <u>also</u> <u>Bennett v. Spear</u>, 520 U.S. 154, 156 (1997) (final agency action "marks the 'consummation of the agency's decision-making" and

is one "by which rights and obligations have been determined" or "from which legal consequences will flow") (citations and internal quotation marks omitted).  The requirement of finality serves the interest of judicial economy:  "'[O]ne of the principal reasons to await termination of agency proceedings' is the possibility that a dispute may be mooted if the party ultimately prevails before the agency, thereby obviating all occasion for judicial review." Id. (quoting FTC v. Standard Oil Co. of Cal., 449 U.S. 232, 244 n.11 (1980)).

BALCA's rulings as to the three SPWDs issued on May 6, 2013, to the employer, Island Holdings LLC, might be viewed as final vis-a-vis that employer.[11]  Nonetheless, those rulings are not sufficiently final to establish a case-or-controversy here.  The DOL's CO has not yet vacated those SPWDs as BALCA instructed the CO to do on remand.  Instead, the agency has stayed those instructions.  See, e.g., Pls. Ex. P (Doc. No. 17-2 at 140-141).  The agency's stay of further action as to all contested SPWDs pending intra-agency review calls into question the finality of BALCA's rulings in Island Holdings.  It is Defendant the Secretary of Labor, and not BALCA, that ultimately makes the policies and rules governing H-2B prevailing wages.

C.      Adjudication Would Be Premature Because Plaintiffs' Claims Are Not Ripe

Yet again, this case does not present an Article III case or controversy for another reason – the asserted claims for relief are not ripe.  "Ripeness is among the requirements for a case or

---

[11]  "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.  A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.  Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative for an appeal to superior agency authority."  APA, 5 U.S.C. § 704.  See also 29 C.F.R. § 18.58 ("decision of the administrative law judge shall become the final administrative decision of the Secretary").

controversy to exist." Birdman, 677 F.3d at 173; accord Keitel, 729 F.3d at 279-80.

"Determining whether administrative action is ripe for judicial review requires us to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." Nat'l Park, 538 U.S. at 808 (citing Abbott Labs., 387 U.S. at 149). Accord Birdman, 677 F.3d at 173; Felmeister, 856 F.2d at 535.

> 1.   Fitness of the Issues for Judicial Resolution

In the review of administrative agency actions, considerations of ripeness preserve the proper separation of powers among the judiciary, the legislature, and an executive agency:

> Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."

Nat'l Park, 538 U.S. at 807-08 (quoting Abbott Labs., 387 U.S. at 148-49). Accord Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 732-33 (1998); Felmeister, 856 F.2d at 535.

As our Court of Appeals cautions, "judicial review is premature when an agency has yet to complete its work by arriving at a definite decision." Felmeister, 856 F.2d at 535 (citing Suburban Trails, Inc. v. N.J. Transit Corp., 800 F.2d 361, 365-66 (3d Cir. 1986)). See also Hooker Chem. Co., Ruco Div. v. EPA, 642 F.2d 48, 53 (3d Cir. 1981) (questionable compliance with a regulation was not ripe for adjudication because the EPA continued to investigate and "review at this time would be an interference with an active administrative proceeding"); Wearly v. FTC, 616 F.2d 662, 666-68 (3d Cir. 1980) (controversy was not ripe where further factual development was necessary). As in Hooker and Wearly, Defendants the Secretary of Labor and the DOL have not yet taken a final position – specifically here, as to whether SPWDs under 20

17

C.F.R. § 655.10(b)(2) are valid and enforceable, and the specific wage methodology to be used. Until the agency's decision is formalized, judicial restraint is required.

In addition, this case presents considerations of ripeness that are closely analogous to those presented in the seminal cases of <u>Abbott Labs.</u> and <u>Toilet Goods Ass'n v. Gardner,</u> 387 U.S. 158 (1967).  These cases show that "[r]ipeness questions often arise when an agency has announced a decision to take a certain action, but that action remains tentative at the time of suit."  <u>Birdman</u>, 677 F.3d at 173.  "A dispute generally is not ripe if the agency's action reflects the tentative nature of its conclusion, in which case the agency expressly reserves the possibility that its opinion might change."  <u>Id.</u> (alteration, citation, and internal quotation marks omitted).  In this case, the agency's stay of action on BALCA's decision, <u>Island Holdings</u>, is tentative action that warrants judicial deference.  Otherwise, review at this time would improperly intrude upon and likely detract from an active administrative rulemaking proceeding.

Similar to the prudential standing requirements for concrete agency action and finality, the requirement of ripeness comprises the "usually unspoken element" of the preservation of judicial resources:

> If we do not decide it now, we may never need to.  Not only does this rationale protect the expenditure of judicial resources, but it comports with our theoretical role as the governmental branch of last resort. . . . Article III courts should not make decisions unless they have to.

<u>Nat'l Treasury Emp. Union v. United States</u>, 101 F.3d 1423, 1431 (D.C. Cir. 1996) (citing <u>Allen v. Wright</u>, 468 U.S. 737, 752 (1984), <u>abrogated on other grounds by</u> <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 134 S. Ct. 1377 (U.S. 2014)).  This rationale applies here.  It is likely that the planned rulemaking will resolve the questions presented.  For example, the 2014 H-2B

Notice suggests that Defendant the Secretary of Labor has stayed consideration of the rulings in Island Holdings in lieu of prospective rulemaking.  And the Notice suggests that the regulatory policy choices for rulemaking will comprehend many, if not all, of BALCA's rulings in Island Holdings.  In addition, Defendants have not fully developed and formalized the policies and choices to be made.  Again, review at this time would disrupt the agency's work.

A line of persuasive cases from the District of Columbia Circuit Court of Appeals supports this conclusion.  See Am. Bird Conservancy, Inc. v. FCC, 516 F3d 1027, 1035-37 (D.C. Cir. 2008) (Kavanaugh, J. dissenting) (ongoing administrative process should be permitted to run its course before any judicial intervention because interests in judicial economy would be furthered by the avoidance of unnecessary adjudication, and the separation of powers requires dismissal so as to not intrude on agency's administrative function); Devia v. NRC, 492 F.3d 421, 424-26 (D.C. Cir. 2007) (review deferred to avoid expenditure of judicial resources on a complex, fact-intensive case and "what could effectively become an advisory opinion"); Toca Producers v. FERC, 411 F.3d 262, 266 (D.C. Cir. 2005) (even though the challenged orders appeared to be "final agency action within the meaning of the APA," the orders were not "sufficiently final" for judicial review because the agency's ongoing action in a separate docket could "resolv[e] the issues raised" in the appeal).

In a situation closely analogous to that presented by the litigation here, AT&T Corp. v. FCC, 369 F.3d 554, 563 (D.C. Cir. 2004) involved an on-going rulemaking proceeding.  The case was dismissed based on ripeness considerations:

> The ripeness doctrine aims to balance a petitioner's interest in prompt consideration of allegedly unlawful agency action against the agency's interest in crystallizing its policy before that policy is subject to review and the court's interests in avoiding

> unnecessary adjudication and in deciding issues in a concrete setting. . . . Here, the issue of whether the FCC should adopt § 272–type safeguards is unfit for review, because the matter is still under consideration in ongoing rulemaking proceedings.

Id. at 563 (citations omitted).  It is noteworthy that the FCC issued a further notice of proposed rulemaking inviting public comment on the challenged policies.  The court ruled that "it is clear that both the Commission and the court will benefit from postponing review of whether safeguards are necessary . . . until the policy in question has crystallized into a more definite form."  Id.  The same considerations apply here.  Defendants must be permitted to discharge their investigatory and rulemaking functions without interference from this Court.

2.  Hardship to the Parties of Withholding Judicial Review

Dismissal of this case on the ground that it is not ripe would serve the interests of judicial economy.  The merits of the regulatory issues presented will likely be the subject of the planned rulemaking that the agency promises to commence in the near future.  Those proceedings may eliminate any need for a judicial decision.

A dismissal here also protects the requisite separation of governmental powers.  It permits the DOL, an agency of the executive branch, to use its special expertise to inquire further into those subject matters that Congress charged it to administer, without undue interference by a reviewing court.  This would impose minimal hardship on Plaintiffs who will have every opportunity to participate in the new rulemaking planned for 2014-2015.  See Ohio Forestry, 523 U.S. at 733-35 (further administrative proceedings are not a sufficient hardship to overcome the lack of ripeness and justify review).

On balance, the perceived hardship to some H-2B workers, who may not timely receive increased wages under the 2013 IFR, appears to be relatively less significant.  The record

establishes that Defendants the Secretary of Labor and the DOL are using the 2013 IFR to administer the H-2B program.  They intend to do so pending conclusion of the planned rulemaking in 2014-2015.  Furthermore, there is no reason to doubt that Defendants have been and will continue to diligently and effectively deliberate on how to best proceed with the 2011 Wage Rule, evaluating other policy choices as well in the light of additional public input and program experience.  Accordingly, Defendants will be permitted to complete the ongoing investigation and planned rulemaking without interference from this Court.

IV.     CONCLUSION

For the reasons above, the motion for summary judgment will be denied.  This action will be dismissed without prejudice to decision on the merits of a future case or controversy.

An Order accompanies this Memorandum.


BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.